IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA TAVEL A/K/A CANDY CARTWRIGHT, | : : : | |
| Plaintiff, | : : | Case No. 1:20-cv-06805 |
| v. | : : : | |
| MATT RIDDLE, WORLD WRESTLING ENTERTAINMENT, INC., EVOLVE WRESTLING, INC., AND GABE SAPOLSKY, | : : : : : | Honorable Manish S. Shah |
| Defendants. | : | |

**PLAINTIFFS' RESPONSE TO DEFENDANT WWE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) & 12(b)(6)**

NOW COMES the Plaintiff, Samantha Tavel a/k/a Candy Cartwright, by and through her attorneys Hale & Monico, and for their response to Defendant World Wrestling Entertainment, Inc. (hereinafter referred to as "WWE") Motion to Dismiss Count II Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6).

### I. INTRODUCTION

The complaint at law asserts a single count against WWE for violation of the Illinois Gender Violence Act ("IGVA") 740 ILCS 82/1. IGVA protects individuals against violence related that is related to gender and specifically prohibits personally encouraging or assisting acts of gender-violence. The complaint alleges that WWE was in violation of the gender violence act, when through its relationship with Evolve and their wrestlers, as well as wrestlers directly affiliated with WWE, perpetuated a culture where gender

violence was prevalent. The presence of this cloudy toxic culture created potential situations where the possibilities of acts of gender violence were extremely heightened.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Evolve and WWE began a working relationship before any event that created this lawsuit had transpired. "Evolve began a working relationship with WWE in 2015, which allowed the latter to scout the indie promotion for new talent to sign. Moreover, Evolve's wrestlers were featured on WWE's website, while numerous WWE wrestlers and authority figures have made appearances for Evolve over the years." Noah Dominguez, *WWE Acquires Evolve Wrestling*, (July 2020) CBR, https://www.cbr.com/wwe-purchases-evolve-wrestling. This relationship is ultimately what saved Evolve as a company. "While Evolve has gained a reputation as one of the star promotions of the indie wrestling scene, the company has endured financial woes and, as *PWInsider* notes, most likely would have folded in 2016 had it not been for its relationship with WWE. Evolve was hit especially hard by the ongoing Coronavirus (COVID-19) pandemic this year." *Id.*

By the time of April 2017 and May 2018, the culture that hyper-sexualizes and burdens females had already been in place. This is evidenced by the #SpeakingOut movement that occurred in the beginning of 2020. At least 40 wrestlers were accused of taken advantage and sexually harassing or assaulting other female wrestlers or female fans. H Jenkins, *List of Names Called Out in #SpeakingOut Movement*, (June 2020) RingSideNews, https://www.ringsidenews.com/2020/06/21/list-of-names-called-out-in-speakingout-movement/. Many of those 40 names are contracted WWE wrestlers, including Matt Riddle. *Id.* While these relationships were in place, Matt Riddle sexually

assaulted Candy Cartwright in April of 2017 and specifically in Summit, Illinois in May of 2018.

The Complaint was originally filed in the Circuit Court of Cook County, Illinois. WWE timely removed the lawsuit to this Court on November 17, 2020. WWE filed this Motion to Dismiss on November 23, 2020. Plaintiff timely files this Response in accordance with Fed. R. Civ. P. 81(c).

### III. ARGUMENT

### A. This Court Sufficiently Has Personal Jurisdiction over WWE

#### 1. Legal Standard

On a motion to dismiss, the plaintiff bears the burden of proving that personal jurisdiction exists. *Cent. States,* 230 F.3d at 939. After personal jurisdiction over a defendant has been challenged, it is the plaintiff's burden to come forward with sufficient evidence to support the Court's personal jurisdiction. *Second Amendment Found. V. United States Conference of Mayors*, 274 F. 3d 521, 524 (D.C. Cir. 2001). Prior to any jurisdictional discovery, a plaintiff need only make out a prima facie case that personal jurisdictional exists. *Crane v. New York Zoological Soc'y,* 894 F.2d 454, 458 (D.C. Cir. 1990). When a court decides a motion on the basis of paper submissions, a court accepts as true the plaintiff's undisputed allegations and resolves any disputes in the evidence in favor of jurisdiction. See *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In deciding the motion, a court may receive and consider affidavits from both parties. *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003).

Diversity cases in Illinois Federal Court, the standard for personal jurisdiction is the same as it would be in Illinois State Court. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990). The modern approach, which is now widely used in Illinois State Courts is to analyze personal jurisdiction only under the due process standards of the U.S. and Illinois Constitutions, and not under the Long-Arm Statute. *Russell v. SNFA*, 2013 WL 1683599, ¶ 30 (Ill. Apr. 18, 2013); *Keller*, 359 Ill. App. 3d at 612.

The due process standard of the U.S. Constitution requires that, for a nonresident defendant to be subject to personal jurisdiction in Illinois, the defendant must have certain "minimum contacts" with Illinois "such that maintenance of the suit there does not offend 'traditional notions of fair play and substantial justice.'" *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150 (1988) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

First, a court must consider whether the nonresident defendant had sufficient "minimum contacts" with Illinois such that there was "fair warning" that the nonresident might be haled into court here. *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 561 (2d Dist. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Illinois Constitution's due process requirement mandates that it be "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990).

While the Illinois long-arm statute is no longer a central part of the personal jurisdiction analysis, it specifically contemplates that acts of an agent can subject a party to jurisdiction in Illinois. See 735 ILCS § 5/2-209(a) ("Any person, whether or not a citizen

or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated ...") (emphasis added). While there is "at least some support for the notion that the instate acts of independent contractors can be imputed to a nonresident defendant for purposes of exercising personal jurisdiction ... the clear weight of authority only supports imputing the in-state acts of an agent to a nonresident defendant." *Madison Miracle Prods., LLC v. MGM Distribution Co.*, 978 N.E.2d 654, 676-77 (Ill. App. 1st Dist. 2012) (emphasis in original) (collecting cases); but see *Richard Knorr Int'l, Ltd. v. Geostar, Inc.*, 2010 WL 1325641, at *10 (N.D. Ill. Mar. 30, 2010) ("By dispatching independent contractors to do its bidding in a forum state, a corporation can acquire sufficient contacts for the forum's exercise of personal jurisdiction to comport with due process.").

### 2. Plaintiff Has Demonstrated General Jurisdiction over WWE

Despite Defendant's argument that the WWE is incorporated in Delaware and headquarted in Connecticut, Defendant fails to inform this Court that the WWE is a Delaware Corporation that is qualified to do business as a corporation in the state of Illinois. Furthermore, the WWE has been qualified as an Illinois corporation since January 26, 1989, and maintains a registered agent in the State of Illinois. (Exhibit A).

### 3. Plaintiff Has Demonstrated a Prima Facie Case for this Court's Specific Jurisdiction over WWE

Plaintiff is asserting specific jurisdiction over WWE. "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 WL 1683599, ¶ 40 (citing *Burger King*, 471 U.S. at 472). "Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based

on certain 'single or occasional acts' in the state but only with respect to matters related to those acts." Id. (quoting; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

WWE is a company that is known and operates worldwide, most specifically in the United States. At the point in time of question, WWE and Evolve had a working relationship while working in conjunction with the signing of wrestlers and conducting events. When this environment, one that is dangerous for females, came to fruition, WWE then become subjected to seeing itself haled into courts wherever an event sponsored by them or there agents was held. This is because wherever this environment was present, the foreseeability of injury was present. To hold otherwise would mean that WWE could only be liable and held in the courts of their general jurisdiction and with respect, when it comes to the tort of sexual assault, this cannot be right.

Every time the WWE operates an event in Illinois, it is benefiting from the Illinois state laws. This benefit comes with a price, and the price is the possibility of being haled into court for actions occurring in that state. The act may have not have come at the direct action of WWE, but as stated above, there has been some support that independent contractors actions can be imputed to their agents. Plaintiff argues that the situation at hand is the scenario where this support needs to be express, when it relates to hyper-sexualized working environments and specifically ones that lead to sexual harassment and assault.

The combination between the acts of Matt Riddle being imputed to Evolve and WWE, with the fact that WWE has conducted business of like kind to the one in Summit, Illinois all over the United States, meets the specific jurisdiction minimum contacts requirement

as WWE could see being haled into court in Illinois. When evaluating this directly against what the Illinois Constitution sets forward, one could reasonably find that haling WWE into court in Illinois for this cause of action is "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."

## B. The Complaint Sufficiently States a Prima Facie Case for Which Relief May Be Granted

### 1. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

"[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's

allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); cf. *Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

In evaluating a motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555056, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990) The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich v. Mraz*, 203 Ill.2d at 228, 271 Ill.Dec. 649, 785 N.E.2d 843

### 2. The Complaint States A Viable Claim Against WWE for Acts of Gender Violence Under the IGVA

To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although sparse, the facts pleaded in the complaint present a viable claim under IGVA. The Act empowers victims of "gender-related violence" to file civil actions against "a person or persons perpetrating that gender-related violence." 740 ILCS 82/10

(West 2016). The Act defines "perpetrating" as "either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence." *Id.*

As stated above and in the complaint, the actions of WWE and their subsidiaries and agents created a hyper-sexualized work environment for all female wrestlers. This is the environment, created by WWE and Evolve, that was present when Candy Cartwright was sexually assault by Matt Riddle. This creation of the environment over years is the active assistance of gender violence. Plaintiff agrees with Defendant that merely "allowing" something to continue does not successfully make a claim, but the active assistance in creating an hyper-sexualized workplace environment in conjunction with its allowance is more than enough. The facts in the complaint detailing the work relationship and dates of the event is, as the *Ross* court held, enough to "raise a reasonable expectation that discovery will reveal evidence." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Further, WWE is a corporation, and generally, corporations have not been allowed to be liable under the IGVA, but the Appellate Court as of recent has provided muddy waters, stating that the possibility for a corporation to be held liable under IGVA is present. Defendant misconstrues the analysis of the Appellate Court in *Gasic v. Marquette Management* to sound as if this 'perfectly' worded complaint is one of next to near impossibility, which is not true. The Appellate Court in *Gasic* states that, over time the nation's courts have come to recognize and establish the high degree of parity that corporations share with natural persons. *Gasic v. Marquette Management, Inc.*, 146 N.E.3d 10, 13 (2019). The rapidly expanding concept of corporate personhood in existing case law has grown to blue the line between natural persons and corporations in the legal context.

*Id.* at 13. Throughout the course of history, corporations have been afforded first amendment protection, fourth amendment right against unreasonable searches and a limited right to privacy, a fifth amendment right against double jeopardy and takings, and a sixth amendment right to trial by jury and to counsel. *Id.* at 13.

After this examination, the Appellate Court was led to find that under **some** circumstances, a legal entity, such as a corporation, can act "personally" for purposes of giving rise to civil liability under the Act. *Id.* at 13. However, the Act's language, which additionally defines perpetrating as "personally encouraging or assisting," serves to muddy the waters and leaves this court unable to answer this certified question with a simple "no." *Gasic v. Marquette Management, Inc.*, 146 N.E.3d 10, 13 (2019). It appears that when the Illinois legislature intends the statutory term "person" to include legal entities other than individuals, it defines the term in that way. For example, in the Illinois Consumer Fraud Act (ICFA), which imposes various prohibitions on "person[s]," and permits lawsuits against any "person" who violates the Act, the legislature provided that "[t]he term "person" includes any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." 815 ILCS 505/1(c). *Fayfar v. CF Mgmt.-IL, LLC*, No. 12 C 3013, 2012 WL 6062663, at *2 (N.D. Ill. Nov. 4, 2012).

Plaintiff argues that under the guidance of the Appellate Court in *Gasic* this is an applicable situation where the IGVA must be used to hold a corporation liable. Time and time again corporations have been able to escape their perpetuated actions through this analysis of the IGVA. Gasic is the first court to outwardly state and recognize, that in

certain situations, corporations can be held and ought to be held liable under this act. The situation before us, where a prominent worldwide company has perpetuated hostile working environments for female employees which has led to a national movement with more and more instances being brought forward, is the situation that calls for corporation to finally be held liable under the IGVA. It does not seem reasonable or fair that a corporation that has perpetuated this culture through many of years, not be allowed to held responsible for their underlying actions simply because they are a corporation. The IGVA is there to protect people from gender violence and when that violence stems from a corporation itself down onto its own actors, allowing the corporation to escape fault from the beginning, is not allowing the act to fulfill its full potential simply because of how a few words are muddily defined is in itself not legal justice.

### III. CONCLUSION

WHEREFORE, Plaintiff asserts that for all of the foregoing reasons Defendants' WWE Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) or 12(b)(6) should be denied.

Respectfully submitted,

John W. Chwarzynski Jr.
Hale & Monico, LLC
53 W. Jackson Blvd. Ste 337
Chicago, Illinois 60604
312-870-6923
jwc@halemonico.com

## **CERTIFICATE OF SERVICE**

I, John W. Chwarzynski Jr., an attorney, hereby certify that on January 8, 2021, I electronically filed the above motion with the Court's CM/ECF system, which simultaneously sent an electronic copy of the same to all counsel of record.

/s/ *John W. Chwarzynski Jr.*