IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | |
|---|---|
| SAMANTHA TAVEL A/K/A CANDY CARTWRIGHT ) ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | |
| ) | Case Number: 20CV6805 |
| MATT RIDDLE, WORLD WRESTLING ENTERTAINMENT, INC., EVOLVE WRESTLING, INC., AND GABE SAPOLSKY ) ) ) ) | |
|     Defendant. ) | |

**DEFENDANT GABE SAPOLSKY'S MOTION TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

NOW COMES the Defendant, Gabe Sapolsky, through his attorneys, Gal Pissetzky and Lawrence Hyman, and respectfully requests this Honorable Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to enter an Order dismissing Count IV of the Complaint against Mr. Sapolsky with prejudice. In support of his motion, Mr. Sapolsky states the following:

**Introduction and Factual Background**

Count IV of the Plaintiff's Complaint, as pleaded against Mr. Sapolsky, alleges violation of the Illinois Gender Violence Act ("IGVA"). More specifically, Plaintiff alleges that Mr. Sapolsky encouraged or assisted Defendant Matt Riddle to sexually assault her sometime around April 2017 and on May 19, 2018. Comp., Ct. IV at ¶¶21, 27, 39-40. The Complaint alleges that sometime around April, 2017 and May 19, 2018, Matt Riddle, a resident of Florida, sexually assaulted Samantha Tavel, a resident of New York. Compl., Ct. IV at ¶¶ 21, 27. It further alleges Mr. Sapolsky, a resident of Brookline, MA, violated the Illinois Gender Violence Act by "assisting

1

and encouraging" the assault. Compl. at ¶39.[1] While the Complaint contains explosive allegations, it wholly fails to provide even the sparsest factual information as to where the alleged sexual assaults occurred and when, where, and how Mr. Sapolsky's liability arises.

The Complaint claims Mr. Riddle first sexually assaulted Ms. Tavel in April of 2017 in a vehicle parked in a parking lot of a wresting event promoted by Evolve. Compl., Ct, IV at ¶21. The Complaint does not provide the specific date, city, nor state where the assault allegedly occurred. As alleged, it is impossible for the assault to have occurred in Illinois. Evolve promoted only two events in April 2017 -both were held in the state of New York. (Dkt. 13-4 at 2-3).

The Complaint further alleges Mr. Riddle bragged to Mr. Sapolsky and other Evolve employees that Mr. Riddle assaulted Ms. Tavel. Compl., Ct. IV at ¶22. The Complaint fails to provide a timeframe, let alone a specific date, as to when Mr. Riddle allegedly bragged to Mr. Sapolsky about committing the assault. Nor does the Complaint state where this bragging occurred and what specific Evolve employees were present. Moreover, Evolve did not have employees at any time. (Ex. 1). The talent that participated at the Evolve events were all independent contractors. (Ex. 1)

The Complaint further alleges that over a year later, on May 19, 2018, Evolve hosted a professional wrestling event in Summit, Illinois. Compl., Ct. IV at ¶26. Following the event, Ms. Tavel claims Mr. Riddle forced her to perform oral sex on him in front of other Evolve members "while on a bus *leaving* the event". Compl. , Ct. IV at ¶ 27 (emphasis added). The Complaint does not allege that Mr. Sapolsky was present when the alleged incident happened, or that he had any knowledge of it. The Complaint does not allege that Mr. Sapolsky or Evolve provided the

---

[1] The Complaint labels multiple paragraphs as paragraph 39. The above citation refers to paragraph 39 in Count IV , page 9 of the Complaint.

transportation used at the time of the assault. The Complaint does not allege that any person notified Mr. Sapolsky of the assault.

In fact, Evolve arranged for transportation from the event to take the independent contractor performers to Michigan. (Ex. 2). Mr. Riddle declined to use the transport. Ms. Tavel came to the May 19, 2018 event on her own volition. Mr. Sapolsky did not request her attendance as she voluntarily appeared at her own expense. (Ex. 3) Ms. Tavel was never an employee of Evolve or Mr. Sapolsky. (Ex. 1)

The Compliant does not allege how long after Mr. Ranta's van left the event the assault occurred, or how Ms. Tavel knew it occurred in Illinois. Notably, the town of Summit is located less than 30 miles west of the Illinois-Indiana state line. The attached exhibits to Mr. Riddle's motion to dismiss make clear the alleged assault did not occur in Illinois[2].

On May 19, 2018, Evolve held 'Evolve 104' at the Summit Park District. 'Evolve 105', the next Evolve event, was set to be held the following day in Livonia, Michigan. (Dkt. 13-4 at 5). Immediately after 'Evolve 104' concluded, Mr. Riddle, Ms. Tavel, James Dowell, Keith Lee, and Anthony Henry departed in Joseph Ranta's personal conversion van to a Michigan hotel. (Dkt. 13-5). Mr. Ranta drove. (Dkt. 13-5 at ¶11).

According to Mr. Ranta's GPS, the party departed the Summit Park District at 12:26 a.m. on May 20, 2018. *Id.* at ¶¶12-14. Mr. Ranta drove for approximately ten minutes before stopping at a nearby gas station. After stopping for gas, the party traveled 33 miles in 48 minutes to a Denny's restaurant located at 6171 Melton Road in Portage, Indiana, arriving at 1:22 a.m.. *Id.* at ¶¶ 14-16. The van drove across the Illinois-Indiana state line into Indiana at around 1:10 a.m.,

---

[2] Mr. Sapolsky adopts and incorporate any and all Exhibits that are attached to Mr. Riddles's and WWE's motions to dismiss.

3

approximately 36 minutes after leaving the Summit area gas station and 12 minutes before arriving at the Indiana Denny's. *Id.* at ¶ 15. Only Mr. Lee fell asleep during the drive from the gas station to the Denny's. *Id.* at ¶ 17.

After eating at Denny's, the party drove to Mr. Ranta's home in Mason, Michigan. *Id.* at 18-19. Almost every passenger fell asleep before arriving to Mr. Ranta's home, but James Dowell remained awake for the most of the drive. *Id.* After staying at the home for approximately 12 minutes, Mr. Ranta drove the party directly to the Comfort Inn Metro Airport hotel near Detroit, Michigan. *Id.* at ¶ 21.

The Complaint further alleges Mr. Riddle continued to force Ms. Tavel to commit sexual acts on him for the next year and a half. Compl, Ct. IV. at ¶ 30. The Complaint does not specify how many times Mr. Riddle subsequently assaulted her, where these assaults occurred, or their underlying circumstances. The Complaint does not allege Mr. Sapolsky was notified that Mr. Riddle committed these assaults. The Complaint alleges Mr. Riddle, acting as an agent and/or employee of WWE and Evolve, forced Ms. Tavel to perform sex acts on him under the threat that if she did not, she would not be booked for any further shows. Compl., Ct. IV at ¶ 30. The Complaint does not allege that Mr. Riddle had the authority to control when and if she would be booked, that Mr. Sapolsky gave Mr. Riddle that authority, or that Mr. Sapolsky himself had the authority to control bookings. The Complaint does not allege that Mr. Sapolsky knew or had reason to know of this threat or acquiesced to the quid pro quo in any way shape of form.

The Complaint further alleges that on or about January 31, 2020, Ms. Tavel refused to continue to allow Mr. Riddle to force her to perform sexual acts on her. Compl., Ct. IV at ¶ 32. The Complaint claims that after she did so, Ms. Tavel's future WWE and Evolve bookings were terminated due to "issue of talent." Compl., Ct. at ¶35. The Complaint does not state where her

4

future WWE or Evolve bookings were to take place. The Complaint does not allege that Mr. Sapolsky allegedly made the decision to terminate Ms. Tavel's future bookings due to anything other than issues with her talent. The Complaint does not state where the alleged decision to terminate the bookings was made or specifically by whom.

Ms. Tavel filed the Complaint in the Circuit Court of Cook County on October 8, 2020 alleging Count IV, violation of the IGVA, against Mr. Sapolsky, as well as other counts alleging violation of the same Act against Mr. Riddle, the World Wrestling Entertainment, Inc., Evolve Wrestling, Inc., and Mr. Sapolsky, praying for $10 million in damages in each count. On November, WWE removed the action to the Northern District of Illinois. (Dkt. No. 1).

## ARGUMENT

I. **This Court Must Dismiss the Complaint Because it Lacks Personal Jurisdiction Over Mr. Sapolsky**

    A. <u>Legal Standard</u>

A 12(b)(2) motion to dismiss turns on whether Ms. Tavel can establish this court's personal jurisdiction over Mr. Sapolsky. Fed. R. Civ. Pr. 12(b)(2). While the "compliant need not include facts alleging personal jurisdiction," *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998), once a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Perdue Research Foundation v. Sanofi-Synthelabo, S.A*, 338 F.3d 773, 782 (7th Cir. 2003). "To determine whether Plaintiff has met [her] burden, district courts may consider affidavits from both parties." *United States v. Zaman*, 152 F.Supp.3d 1041, 1045 (N.D. Ill. 2015) (citing *Felland*, 682 F.3d at 672). When a defendant submits sworn statements contradicting assertions made by the complaint, plaintiff then "has an obligation to go beyond the pleadings and submit affirmative evidence

supporting the exercises of jurisdiction." *Id.* (citing *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). 783. Courts "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

If this court resolves the motion without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found.*, 338 F.3d at 782. An evidentiary hearing is required where the submissions reveal disputed facts that are material as to whether plaintiff has made a *prima facie* showing. *Wilson v. Nouvag GmbH*, 2018 WL 1565602, at * 2 (N.D. Ill. 2018).

When weighing whether a federal court has personal jurisdiction over an individual, the question "is governed by the law of the forum state." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Here, the Illinois long-arm statute applies, and this court's exercise of jurisdiction is permitted to the full extent of the Fourteenth Amendment's Due Process Clause. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing 735 ILCS 5/2-209(c)). In other words, the state and federal inquiries merge. *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008).

Under these parameters, jurisdiction can be established either in 'general' or 'specific' terms. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction requires such 'continuous and systematic' contacts to the forum state that the cause of action need not even arise out of them. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416 (1984). Accordingly, the "threshold for general jurisdiction is high; the contact must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). General jurisdiction "is proper only in the limited number of

fora in which the defendant can be said to be 'at home.'" *Advance Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). As such mere isolated or sporadic contacts -such as occasional visits to the forum state – are insufficient to establish general jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 672, 475 (1985).

Unlike general jurisdiction, specific jurisdiction requires the conduct subject to the suit must directly arise out of the defendant's contacts with the forum state. *Tamburo*, 601 F.3d at 702. In determining whether this court may exercise specific jurisdiction, this court looks to whether: 1) the defendant purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and 2) the alleged injury arises out of the defendant's forum-related activities. *Burger King*, 471 U.S. at 472.

B. <u>Analysis</u>

Though the Complaint does not specify whether it relies on specific or general jurisdiction, neither applies here. Mr. Sapolsky is clearly not subject to this court's general jurisdiction as he was served in, and resides in, the state of Massachusetts. Mr. Sapolsky does not maintain any residence in the state of Illinois, and does not have any ties to Illinois. Such lack contacts negate any claim that Mr. Sapolsky has such pervasive connections to Illinois that he can reasonably anticipate being hailed into an Illinois court for any basis.

Though specific jurisdiction entails a lower bar than does general jurisdiction , the facts at issue here do not establish specific jurisdiction. As detailed above, specific jurisdiction is only established if Mr. Sapolsky purposefully directed his activity at the forum state, or purposefully availed himself of the privilege of conducting business in that state, *and* 2) if Ms. Tavel's alleged injuries arise out of those activities. *Burger King*, 471 U.S. at 472. The purported connection that ties the cause of action to Illinois is the mere allegation that Ms. Tavel was allegedly assaulted

*after* leaving an event held in Illinois that was put on by Evolve. The Complaint does not allege how Mr. Sapolsky encouraged or assisted the commission of gender violence against Ms. Tavel in the state of Illinois. The Complaint's 'vague generalizations' that Mr. Sapolsky created an atmosphere of toxic misogyny that encouraged gender violation "are insufficient to support personal jurisdiction." *Mohammed v. Uber Techs, Inc.*, 237 F. Supp. 3d 719, 733 (N.D. Ill. 2017). Therefore, to survive a jurisdictional challenge, the cause of action must arise directly from Mr. Sapolsky's part in hosting the May 19 event. The most cursory review of the underlying factual circumstances reveals the Complaint's allegations cannot connect Mr. Sapolsky to the alleged assault or the state of Illinois.

As an initial matter, it is important to point out that Mr. Sapolsky did not hire Ms. Tavel to perform at this event. She came to the event on her volition, insisted on attending the event, and paid her own expenses. (Ex. 3) Also, although Mr. Riddle performed at the event, he did so as an independent contractor. At no point did Mr. Sapolsky or Evolve hire Mr. Riddle or Ms. Tavel as employees of Evolve. In fact, Evolve only employs two people -Mr. Sapolsky and Sal Hamaoui.

Further decreasing the event's relevance, Ms. Tavel does not allege that Mr. Riddle assaulted her during the event. Instead, she claims Mr. Riddle assaulted her "*after* the Evolve event . . . while on a bus leaving the event," a bus that was neither provided by Mr. Sapolsky nor Evolve. Compl., Count IV at ¶ 27 (emphasis added), Dkt. 13-5 at ¶ 11. In fact, the bus was not even a bus, but an old van belonging to and driven by Mr. Ranta. Moreover, Mr. Sapolsky was not in Mr. Ranta's van with Riddle and Tavel, and had no knowledge of the events once the couple left the Evolve 104 show.

Accordingly, any connection between the Evolve event or Mr. Sapolsky and the Complaint's allegations terminated long before the alleged assault that forms the basis of the

8

Complaint had occurred. Indeed, as the Complaint make clear, the alleged assault did not occur until after Mr. Ranta began driving his personal van and its passengers from the Indiana Denny's to his Michigan home. (Dkt. 13-5 at ¶18-21; Dkt. 13-3).

The May 19 event, Mr. Sapolsky's sole connection to the state of Illinois, is not casually connected to the conduct alleged in support of Count IV. The assault did not occur at the 'Evolve 104' event or in Illinois. The assault did not occur in a vehicle provided by Mr. Sapolsky or Evolve. Mr. Sapolsky was not present during the alleged assault, and the Complaint does not allege that he had any advance knowledge of the assault. The alleged assault happened in a private vehicle occupied by individuals that voluntarily decided to travel together. The allegations underlying the Complaint therefore do not arise directly out of any actions by Mr. Sapolsky took or the Evolve event in Summit, IL on May 19, 2018. Consequently, this court cannot exercise specific jurisdiction over Mr. Sapolsky and should dismiss the Count IV of the Complaint.

## II. Plaintiff fails to state a cognizable claim under the Gender Violence Act

### A. Legal Standard

Under Fed. R. Civ. P. Rule 12(b)(6), a motion to dismiss for failure to state a claim tests the sufficiency of a claim, not the merits of the claim. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). A court should grant a motion to dismiss pursuant to Rule 12(b)(6) when a plaintiff fails to plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under 28 U.S.C. § 1332. The Court applies the substantive law of the forum state, here, Illinois. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 876 (7th Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must: (1) describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the

grounds upon which it rests, and (2) plausibly suggest that the plaintiff has a right to relief above a speculative level. *Doe v. Soebeck,* 941 F. Supp. 2d 1018, 1020 (S.D. Ill. 2013).

Count IV against Mr. Sapolsky pleads gender-related violence, pursuant to the Illinois Gender Violence Act (IGVA), 740 ILCS §82/2-1 *et seq.*, (West 2021), effective Jan. 1, 2004. The Act defines gender-related violence as follows:

> (1) One or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction.
>
> (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois, whether or not the act or acts resulted in criminal charges, prosecution, or conviction.
>
> (3) A threat of an act described in item (1) or (2) causing a realistic apprehension that the originator of the threat will commit the act. 740 ILCS 82/5 (West 2021).

A person perpetrates gender-related violence, pursuant to the Act, by either personally committing the gender-related violence or by personally encouraging or assisting the act or acts of gender-related violence. 740 ILCS 82/10.

B.  Analysis

Ms. Tavel pleads, pursuant to the Illinois statute detailed above, that Mr. Sapolsky had a duty of ordinary care to avoid causing injury and/or harmful or offensive contact, including acts of gender violence, and to refrain from encouraging or assisting tortious conduct, including acts of gender violence, committed by Mr. Riddle against her. (Compl., Ct. IV, ¶¶ 36-37.) As an initial matter, the statute does not set forth liability for common law breaches of duty, as the complaint pleads. Instead, to be liable, *i.e.* a "perpetrator" under the Act, the defendant must either "personally commit the gender-related violence, or personally encourage or assist the act or acts of gender-related violence." 740 ILCS 82/10.

The Complaint does not set forth any facts showing Mr. Sapolsky is a perpetrator under either of the criteria. It does not allege Mr. Sapolsky personally committed an act of gender-related violence against Ms. Tavel. Instead, Ms. Tavel alleges Mr. Sapolsky "by and through its agents and/or employees" violated the act. (Compl., Ct. IV at ¶ 38). Importantly, Mr. Sapolsky is not a corporate entity, and does not have any agents or employees. Even if that were so, the Complaint does not specifically allege who these agents/employees are, how Mr. Sapolsky controlled their actions in such a way that they could be said to be his employees/agents, or how these purported employee/agents specifically "encouraged or assisted" in the commission gender violence acts against Ms. Tavel. (Compl., Ct. IV ¶39). The Complaint's "labels and conclusions" without factual support are insufficient to plead more than speculative relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Even if the Complaint contained such facts, it is of no matter. As a recent Northern District of Illinois Court held, "because 'one does not typically understand . . . legal entities to 'personally' perform actions," the Act's "personally commit" and "personally encourage" phrasing "reinforces the conclusion that the IGVA only governs natural persons." *Robinson v. FedEx Ground Package System, Inc.,* 19 cv 1710, 2020 WL 586866, at *3 (N.D. Ill. Feb. 6, 2020) (citing *Fayfar v. CF Mgmt. -IL LLC*, No. 12 C 3013, 2012 WL 6062662, at *2 (N.D. Ill. Nov. 4, 2012)).

The Complaint's factual allegations pertaining to Mr. Sapolsky as a person fare no better. The Complaint specifically alleges that after Ms. Tavel refused to perform sex acts on Mr. Riddle:

> Mr. Riddle "informed the *WWE and Evolve* that he did not want [Ms. Tavel] working with the WWE and Evolve due to [her] no longer performing forced sexual acts on him;" (Compl., Ct. IV at ¶34) and

> "WWE, Evolve, and [Mr. Sapolsky], then "continued to *tacitly* approve of defendant, Matt Riddle's conduct, and assisted and encouraged his behavior by removing [Ms. Tavel] from future bookings with WWE and Evolve."(Compl, Ct. IV at ¶35) (emphasis added).

11

The Complaint does not allege Mr. Riddle ever informed Mr. Sapolsky that Ms. Tavel had rejected his advances before the violence ceased entirely. Even if such knowledge is attributed to Mr. Sapolsky, it cannot infer encouragement or assistance by him of acts of gender-violence by Mr. Riddle to Ms. Tavel because the so-called tacit approval, removing Ms. Tavel from future bookings, occurred after the violence had ended. As federal and Illinois courts uniformly hold, these deficient allegations foreclose a cause of action against Mr. Sapolsky.

The Southern District of Illinois Court's holding in *Doe v. Sobeck*, 941 F. Supp. 2d 1018 (S.D. Ill. 2013) is instructive. Noting "no Illinois court has defined exactly what 'personally encouraging or assisting' entails," the court turned to 'encourage's' and 'assist's' dictionary definitions: "'to inspire with courage, spirit, or hope,' 'to attempt to persuade,' 'to spur on,' or 'to give help or patronage to,'" and "'to give support or aid,'" respectively. *Id.* at 1028 (internal citations omitted). Both words' definitions, the court concluded, "impl[y] a conscious, active role, not merely a failure to act or tolerance of a situation." *Id.*

Adopting the words' plain meanings here is consistent with prior courts' holdings. Those cases, the *Sobeck* court stressed, separated defendants who simply failed to stop gender-related violence despite having knowledge it was occurring, from those who did not just turn a blind eye to those actions but also either actively promoted the perpetrator's violence acts or retaliated against the victim. For instance, a township and its employees' failure to supervise a township supervisor who committed gender-related violence did not constitute encouragement or assistance. *Id.* at 1027 (citing *Watkins v. Steiner*, 2013 WL 166737, *3-4 (Ill. App. Ct. Jan. 14, 2013). Similarly, a college fraternity's failure to warn a female student who became intoxicated on the premises of its local chapter of the possibility of assault before she left with another party attendee, who then assaulted her, did not plead encouragement or assistance. *Doe v. Psi Upsilon Int'l*, 2011

12

IL App (1st) 110306 (Ill.App.Ct.2011). In contrast, encouragement of gender-based violence existed where supervisors not only knew of an employee's gender-violence acts, but took active steps such as promoting the employee or forcing the employee to quit to avoid the violence. *Id.* at 1028 (citing *Cruz v. Primary Staffing, Inc.,* No. 10 C 5653, 2011 WL 1042629, at *1 (N.D. Ill. Mar. 22, 2011), and *Smith v. Rosebud Farmstand*, 909 F.Supp.2d 100, 1009 (N.D. Ill.2012)).

Based on its analysis, the *Sobeck* court opined, "a defendant's failure to act against a possible harm [is] not encouragement or assistance," under the Act. *Id.* at 1028. Turning to the facts before it, that court held that because the complaint only alleged the defendants failed to protect the plaintiff from the perpetrator, it therefore failed to properly state a claim under the IGVA. *Id.* at 1028.

As *Sobeck* and the cases to which it cites make clear, the Complaint's allegations that Mr. Sapolsky "knew or had reason to know that [Mr. Riddle] had a propensity to commit [acts of gender-violence]," but turned a blind eye simply fail to properly plead a cause of action under the IGVA, where he took no actions to encourage or assist before the violence had ended. (Compl., Ct. VI at ¶ 39). Like *Sobeck*, the Complaint does not allege Mr. Sapolsky encouraged or assisted Mr. Riddle to assault Ms. Tavel by "giving him a pep talk, telling him he thought it "would be a good idea", or in any way spurring Mr. Riddle into violence against Ms. Tavel. *Sobeck*, 941 F. Supp. 2d at 1028. The Complaint's accusation that Mr. Sapolsky "tacitly" approved of Mr. Riddle's alleged assault by allegedly burying his head in the sand insufficiently pleads encouragement or assistance.

The Complaint's allegation that Mr. Sapolsky removed Ms. Tavel from future bookings does not save the Complaint. (Compl.. Ct. IV at ¶35). Importantly, for this act to fall within the realm of encouragement under the IGVA, Mr. Sapolsky must have done so before the alleged

13

violence had ended. Indeed, the fact that the plaintiffs in *Cruz* and *Smith* specifically alleged they complained to the defendants about gender-related violence before the defendants committed the alleged affirmative acts set those cases apart. *Sobeck*, 941 F. Supp. 2d at 1028. The same cannot be said here. Instead, Ms. Tavel pleads Mr. Riddle informed only WWE and Evolve, and only after the violence had ended. The Plaintiff's facts, like those in *Watkins*, do not infer that Mr. Sapolsky actively encouraged Riddle to engage in gender-based violence against her. When accepted as true, these facts do not rise above the speculative level. They fail to state a claim for relief pursuant to the Gender Violence Act.

**WHEREFORE**, Mr. Sapolsky respectfully requests that this Honorable Court grant his motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

Respectfully Submitted,

/s/Gal Pissetzky
Gal Pissetzky
Pissetzky Law LLC
35 E. Wacker Dr.
Suite 1980
Chicago IL 60601
(847)736-7756
gal@pissetzkylaw.com

/s/ Lawrence H. Hyman
Lawrence H. Hyman (#1297929)
LAWRENCE H. HYMAN & ASSOCIATES
111 West Washington Street - Suite 1025
Chicago, Illinois 60602
(T): (312) 346-6766
(F): (312) 346-9688
(E): hymanlaw@lhyman.com

**CERTIFICATE OF SERVICE**

      I, Gal Pissetzky, the attorney for Defendant, hereby certify that on January 8, 2021, I filed the above-described documents on the CM/ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

                                              /s/Gal Pissetzky
                                              35 E. Wacker Dr.
                                              Suite 1980
                                              Chicago IL 60601
                                              (847)736-7756
                                              gal@pissetzkylaw.com